*E-FILED: September 9, 2013*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHAWN JOSEPH, Ph.D., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC.; JEFFREY P. BEZOS, <br><br> Defendants. | Case No. C12-06256 HRL <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO ENFORCE FORUM SELECTION CLAUSES** <br><br> [Re: Docket Nos. 8, 31] |

Pursuant to Fed. R. Civ. P. 12(b)(3), defendants Amazon.com, Inc. (Amazon) and Jeffrey P. Bezos move to dismiss the complaint for improper venue, or in the alternative, to transfer this matter to the U.S. District Court for the Western District of Washington. Pro se plaintiff Rhawn Joseph, Ph.D. opposes the motion. All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Upon consideration of the moving and responding papers,[1] as well as the arguments presented at the motion hearing, the court grants defendants' motion to enforce the forum selection clauses.

## BACKGROUND

Pro se plaintiff Rhawn Joseph, Ph.D. sues for alleged antitrust violations, fraud, defamation/slander/trade libel, and breach of contract. The complaint is brought on behalf of a putative class "of all [print on demand] authors, publishers and publishing companies in the

---

[1] In violation of Civil Local Rule 7-3(d), plaintiff submitted an unauthorized sur-reply brief, as well as a second unauthorized brief after the motion hearing. Although plaintiff is representing himself, he is expected to comply with the court's rules which all litigants are obliged to follow. While defendants' objection to plaintiff's post-hearing submission is well-founded, the court has nevertheless considered all of plaintiff's filings, and defendants' motion to strike his post-hearing brief (Dkt. No. 31) is denied. As discussed more fully below, plaintiff's filings do not change this court's conclusion that the forum selection clauses at issue should be enforced.

1   United States who have had books listed for sale in the Amazon Bookstore, at any time from

2   February 10, 2008 through the conclusion of trial of this matter . . ..."[2]  (Complaint ¶ 41).

3         Dr. Joseph says that he is an author and science book publisher whose publishing company

4   relies on "print on demand" (POD) technology, whereby copies of a book are printed only when

5   an order is received from a customer or a retail bookseller.  He says that he relies on a company

6   known as LightningSource to print his books.

7         According to the complaint, Amazon prints books using its own POD technology and its

8   own POD printing house.

9         Amazon has several programs through which sellers can offer their products for sale on

10  Amazon's website.  To enroll in these programs, sellers are required to enter into online

11  agreements.  Plaintiff entered into three programs/agreements, which are discussed in the

12  complaint:  (1) Amazon Advantage; (2) Amazon Marketplace; and (3) Amazon Associates.  In

13  essence, plaintiff claims that Amazon uses unfair business practices to coerce authors/publishers to

14  print and publish only with Amazon, under programs that impose onerous conditions or

15  obligations on the authors/publishers and place them at an economic disadvantage.

16        <u>Amazon Advantage</u>

17        The complaint alleges that the Amazon Advantage program requires members to sell their

18  books to Amazon at a significant discount and at great expense to the authors/publishers, with the

19  result that they are forced to sell their books at a loss or for minimum profit.  Plaintiff further

20  alleges that if members refuse to use Amazon's POD company or the Amazon Advantage

21  program, then Amazon refuses to sell their books, defames them, and falsely states that their

22  books cannot be shipped for up to six weeks.  Plaintiff claims that this program is an illegal tying

23  arrangement that violates federal antitrust laws.

---

[2] Because this court concludes that the forum selection clauses in question should be enforced and that this matter should be litigated in Washington, the court does not reach defendants' request to strike plaintiff's class action allegations.  However, the court notes that plaintiff has acknowledged that, as a pro se litigant, he cannot represent a class.  See generally Rudgayzer v. Yahoo!, Inc., No. 5:12-cv-01399 EJD, 2012 WL 5471149 at *4 (N.D. Cal., Nov. 9, 2012) ("Courts have generally concluded that a purported class representative who proceeds pro se violates this test of adequacy of representation; in other words, a pro se plaintiff cannot represent a class in a class action.") (citing McShane v. United States, 366 F.2d 286, 288 (9th Cir. 1966)).

(left margin: United States District Court / Northern District of California)

Amazon Marketplace

Plaintiff claims that the Amazon Marketplace program also damages authors and publishers. According to the complaint, for a fee and a percentage of sales, the Amazon Marketplace program allows sellers to indirectly sell books to the public on a webpage separate from Amazon's main webpage. Plaintiff believes that customers prefer to buy books directly from Amazon's site because they are more familiar with Amazon, as opposed to private vendors and sellers about whom they may have little or no knowledge. The complaint goes on to allege that while Amazon offers free shipping programs, that option is not available through Amazon Marketplace. Consequently, plaintiff believes that only a small fraction of book sales are actually made through the Amazon Marketplace program.

Amazon Associates

According to the complaint, under the Amazon Associates program, independent authors/publishers can promote their books on their own websites and, through the use of "special links," direct customers to Amazon's website where they can purchase the books. Plaintiff says that in return, Amazon is supposed to pay a fee to the authors/publishers when the books are sold. However, plaintiff claims that when customers click on the "special link" to Amazon's website to buy a particular book, Amazon redirects them to other products and then deletes the "special link" in order to avoid paying its associates the required referral fee. Plaintiff says that this is a "bait and switch" scheme through which Amazon has defrauded him of fees.

The complaint seeks hundreds of millions in dollars in damages and asserts the following five claims for relief: (1) "Tying Claim, Violation of Sherman Antitrust Act"; (2) "Libel, Defamation, Slander, Trade Libel"; (3) "Malice, Oppression, Fraud"; (4) "Personal Injury"; and (5) "Bait & Switch, Breach of Contract."

Defendants now move to dismiss the complaint under Fed. R. Civ. P. 12(b)(3) for improper venue. They contend that the Amazon program agreements contain forum selection clauses requiring this matter to be litigated in Washington state.

# LEGAL STANDARD

A motion to enforce a forum selection clause is treated as a Fed. R. Civ. P. 12(b)(3) motion to dismiss for improper venue. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). In such motions, the pleadings need not be accepted as true, and the court may consider facts outside the pleadings. Id. Where there are contested facts bearing on the impact of a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

# DISCUSSION

There is no dispute that plaintiff established accounts with Amazon under each of the three programs described in his complaint. Each of those agreements contains forum selection clauses.

The Amazon Advantage agreement provides:

> **22. Disputes**
> Any dispute relating to this Agreement (including any actual or alleged breach here of [sic]), any transactions or activities under this Agreement or your relationship with us or any of our affiliates in which the aggregate total claim for relief sought on behalf of one or more parties exceeds $7,500 will be adjudicated in any state or federal court in King County, Washington, and you consent to exclusive jurisdiction and venue in such courts.
>
> **25. Miscellaneous**
> a. Choice of Law. This Agreement is governed by the laws of the State of Washington, without reference to rules governing choice of laws or the Convention on Contracts for the International Sale of Goods.

(Radliff Decl., Ex. A at p. 4).

The Amazon Marketplace agreement provides:

> **18. Applicable Law.** The laws of the state of Washington govern this Participation Agreement and all of its terms and conditions, without giving effect to any principles of conflicts of laws or the Convention on Contracts for the International Sale of Goods. Any dispute with Amazon or its affiliates relating in any way to these terms and conditions or your use of the Services in which the aggregate total claim for relief sought on behalf of one or more parties exceeds $7,500 shall be adjudicated in any state or federal court in King County, Washington, and you consent to exclusive jurisdiction and venue in such courts.

4

(Radliff Decl., Ex. B at p. 10).

Although the Amazon Associates agreement now contains a mandatory arbitration clause, the version of the agreement signed by plaintiff contained the following forum selection clause:

> **19. Disputes**
> Any dispute relating in any way to the Program or this Operating Agreement in which the aggregate total claim for relief sought on behalf of one or more parties exceeds $7,500 will be adjudicated in any state or federal court in King County, Washington, and you hereby consent to exclusive jurisdiction and venue in those courts. The laws of the State of Washington, without regard to principles of conflicts of laws, will govern this Operating Agreement and any dispute of any sort that might arise between you and us.

(Radliff, Ex. C at p. 10).

### A. Scope of the Forum Selection Clauses

Federal law applies to the interpretation of a forum selection clause, and courts look to general principles of contract interpretation for guidance. Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988). "Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first." Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999). "The fact that the parties dispute a contract's meaning does not render the contract ambiguous; it is only ambiguous if reasonable people could find its terms susceptible to more than one interpretation." Id.

In analogous cases concerning the interpretation of arbitration clauses, courts have held that clauses using the terms "arising under," "arising out of," and "arising hereunder" are to be "interpreted narrowly" to cover only those disputes "relating to the interpretation and performance of the contract itself." Cape Flattery Limited v. Titan Maritime, LLC, 647 F.3d 914, 922 (9th Cir. 2011). By contrast, clauses using the phrase "relating to" indicate that the scope of the clause is subject to broader interpretation. Id.; cf. Mediterranean Enters., Inc. v. Ssangyong Corp., 708 F.2d 1458, 1463-64 (9th Cir. 1983) (explaining that the omission of the phrase "relating to" in an arbitration clause results in a narrower scope of covered disputes).

Here, each of the forum selection clauses are very broadly worded and say that they apply

to any dispute relating in any way to the agreements or to plaintiff's use of the program services---and, in the case of the Amazon Advantage program, the clause also applies to all disputes "relating to . . . [plaintiff's] relationship with [Amazon] . . .." (Radliff Decl., Ex. A).

The gravamen of plaintiff's complaint is that Amazon conducts its business by bullying independent authors and publishers into participating in programs with terms and conditions that are disadvantageous for them. Each of plaintiff's claims flow from his dissatisfaction with Amazon's alleged business practices and relate in some way to the rights and duties set out in plaintiff's various agreements with Amazon.

Plaintiff's fifth claim for relief for "Bait & Switch, Breach of Contract" alleges that defendants breached the Amazon Associates agreement by engaging in a scheme to defraud plaintiff of referral fees and book sales. Plaintiff acknowledges that this claim may well fall within the scope of the program's agreement. Indeed, the scope of the Amazon Associates' forum selection clause broadly covers "[a]ny dispute relating in any way to the Program or this Operating Agreement . . .." (Radliff Decl., Ex. C). Plaintiff's other claims for "Malice, Oppression, Fraud"[3] and "Personal Injury" share the same factual basis as his contractual claim under the Associates agreement, and they are also covered by the forum selection clause.

Plaintiff contends that his antitrust and defamation/slander/libel claims have nothing to do with the agreements in question and that the forum selection clauses at issue therefore do not apply. But the crux of his antitrust claim is that Amazon foists upon authors/publishers what plaintiff says are burdensome and economically disadvantageous terms of that program---and defames, libels, or refuses to sell the books of those who choose not to use the program. The antitrust claim therefore will involve interpretation of the Advantage agreement and the performance requirements mandated by its terms. Moreover, as discussed above, the Amazon Advantage forum selection clause broadly applies not only to "[a]ny dispute relating to this Agreement (including any actual or alleged breach here of [sic])" but also to "any transactions or

---

[3] This claim appears to be based on California Civil Code § 3294. That statute does not provide a cause of action. Rather, it provides a basis for seeking exemplary damages in connection with certain kinds of claims.

activities under this Agreement *or your relationship with us* . . . ."  (Radliff Decl., Ex. A) (emphasis added).  The related claim for "Libel, Defamation, Slander, Trade Libel" is also similarly connected to the rights and duties set out in the Advantage agreement.  That claim essentially alleges that Amazon deleted positive reviews about plaintiff and his books, leaving only the negative comments.  Plaintiff says that Amazon warned him that he must use Amazon's printing services under the Advantage program, and that if he refused, then he would suffer "economic reprisal" and Amazon would take steps to harm the sales of his books---all of which, plaintiff says, "goes to the heart" of his antitrust claim.  (Dkt. No. 17, Opp. at ¶ 19).  The court finds that the "Libel, Defamation, Slander, Trade Libel" claim also falls within the scope of the Advantage agreement's forum selection clause.

Plaintiff nevertheless maintains that the Advantage agreement is irrelevant because he has not sold any of the books at issue through the Advantage program and because when he checked his Advantage account in April 2013, he was notified that his account was not activated and would be "available shortly."  (Dkt. 30 at 3).  That does not change the court's analysis.  Plaintiff acknowledges that he established his Advantage account in 2000 and does not dispute that he entered into the Advantage agreement.  His claims relate to that contract and fall within its forum selection clause.  And, to the extent his claims for "Malice, Oppression, Fraud" and "Personal Injury" share the same factual basis, those claims are also subject to the Advantage agreement's forum selection clause.

For the same reasons, to the extent plaintiff's claims are premised on his allegation that the Marketplace program also damages authors and sellers (Complaint, Section III at 7), his claims are subject to that agreement's forum selection clause, which applies to "[a]ny dispute with Amazon or its affiliates relating in any way to these terms and conditions or your use of the Services . . .." (Radliff Decl., Ex. B at 10).

All of the forum selection clauses require that the dispute involve over $7,500.  That requirement is easily met here, because plaintiff claims that he is entitled to hundreds of millions of dollars in damages.

### B. Enforcement of the Forum Selection Clauses

"Forum selection clauses are prima facie valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" Manetti-Farrow, Inc., 858 F.2d at 514 (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L.Ed.2d 513 (1972)).  There are three reasons that would make enforcement of a forum selection clause unreasonable: "(1) 'if the inclusion of the clause in the agreement was the product of fraud or overreaching'; (2) 'if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced'; and (3) 'if enforcement would contravene a strong public policy of the forum in which suit is brought.'"  Murphy, 362 F.3d at 1140 (quoting Richards v. Lloyd's of London, 135 F.3d 1289, 1294 (9th Cir. 1998)).  The party challenging the clause bears a heavy burden of proof.  Id. (citing The Bremen, 407 U.S. at 15, 92 S. Ct. 1907).  Although a forum selection clause in and of itself is not dispositive of a motion to transfer venue, "[t]he presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus."  Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239 (1988).

Plaintiff's complaint generally alleges that he was forced to enter the Advantage agreement and further asserts that the Amazon Associates agreement is actually part of a scheme to defraud participants of referral fees and sales.  But "simply alleging that one was duped into signing the contract is not enough."  Richards v. Lloyd's of London, 135 F.3d 1289, 1297 (9th Cir. 1998).  Instead, a party opposing enforcement of a forum selection clause must show that the inclusion of the forum clause itself was the product of fraud or overreaching.  Id.  Plaintiff has made no such showing here.  See, e.g., Gamayo v. Match.com LLC, No. C11-00762 SBA, 2011 WL 3739542 at *4 (N.D. Cal., Aug. 24, 2011) (rejecting conclusory assertions that the forum selection clause was the product of fraud or overreaching where plaintiff proffered only conclusory assertions, and notwithstanding her contention that the agreement in question was "part and parcel" of an overarching scheme to defraud the public); Pacific Health Advantage v. CAP Gemini Ernst & Young U.S. LLC, No. C07-1565 PJH, 2007 WL 1288385 at *2 (N.D. Cal., May 2, 2007) ("Here,

1   [plaintiff] attempts to argue that the entire contract was obtained through fraud, but provides no
2   evidence that the forum selection clause was the product of fraud."); Democracy Council of
3   California v. WRN Ltd., PLC, No. CV 10-5088, 2010 WL 3834035 at *5 (C.D. Cal., Sept. 27,
4   2010) ("[Plaintiff's] general fraud allegation is not sufficient to nullify the forum selection clause
5   and there is no evidence that the forum selection clause itself was inserted into the Agreement as a
6   result of fraud, undue influence or overweening bargaining power.").

   Plaintiff otherwise asserts that it will be a hardship for him to litigate in Washington because he relies on his book sales for a living and defendants' alleged wrongdoing has negatively impacted his income. He contends that it will be far easier for defendants to litigate here because they reportedly have billions of dollars at their disposal. Plaintiff also believes that defendants will have an unfair home advantage in Washington because that is where Amazon is based. This matter, however, is not before this court on a *forum non conveniens* motion. And, "[t]he Supreme Court has distinguished the inconvenience necessary to establish unreasonableness of a forum selection clause and the balancing of convenience test appropriate in a change of venue or forum non conveniens motion." Pelleport Investors, Inc. v. Budco Quality Theatres, 741 F.2d 273, 281 (9th Cir. 1984). "To establish unreasonableness of a forum selection clause the party resisting enforcement of the clause has a heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party effectively would be denied a meaningful day in court." Id. Plaintiff asserts that travel will present a hardship, but there is no indication that he is infirm, disabled, or otherwise financially unable to travel. And, the inconvenience of travel does not, by itself, equate to the denial of a meaningful day in court. Id. at 281 (rejecting the inconvenience of travel as a basis for avoiding a forum selection clause). Nor does the court find any basis to conclude that the Washington courts will be unable to fairly adjudicate plaintiff's claims, as he suggests.

   Accordingly, the court concludes that plaintiff has not met his burden of showing that the forum selection clauses are unreasonable. The clauses will therefore be enforced. Rather than dismiss this action, however, the court will transfer it to the Western District of Washington.

**ORDER**

Based on the foregoing, defendants' motion to enforce the forum selection clauses is granted. This matter is transferred to the U.S. District Court for the Western District of Washington. The clerk shall transfer this matter and close this file.

**SO ORDERED**.

Dated:   September 9, 2013

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5:12-cv-06256-HRL Notice has been electronically mailed to:

Roderick Manley Thompson rthompson@fbm.com, adugan@fbm.com, calendar@fbm.com

Karen P. Kimmey kkimmey@fbm.com, bkaman@fbm.com

James Alexander Reese areese@fbm.com

5:12-cv-06256-HRL Notice sent by U.S. Mail to:

Rhawn Joseph Ph.D.
677 Elm Street
San Jose, CA 95126

United States District Court
Northern District of California

11